# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **T.G. and M.G.**

**No. 20-0228** (Kanawha County 19-JA-579 and 19-JA-580)

**FILED**

**September 23, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother S.T., by counsel Sandra K. Bullman, appeals the Circuit Court of Kanawha County's February 7, 2020, order terminating her parental rights to T.G. and M.G.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem, Joseph H. Spano Jr., filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without granting her an improvement period, without requiring the DHHR to file a family case plan in regard to M.G., and without considering less-restrictive dispositional alternatives.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The DHHR filed an abuse and neglect petition in September of 2019 that alleged that petitioner took T.G. to the hospital with second-degree burns on approximately ninety-five percent of the child's face. According to the DHHR, petitioner indicated that the injuries occurred several days prior to when she sought treatment for the child. Although she could not explain how the child's injuries happened, petitioner reported that they occurred while T.G. was in the care of her boyfriend, who lived in the home. Petitioner told the DHHR that she left for a

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

job interview and, when she arrived home, she found the child injured. The boyfriend refused to tell her how the burns occurred and, according to petitioner, would not let her leave the home. When petitioner did eventually leave, instead of immediately seeking treatment for the child, she went to her mother's home. According to the DHHR, petitioner expressed fear that her children would be removed from her care because of T.G.'s injuries, so she attempted to treat them herself by applying ointment and wrapping them in gauze. After several days, however, petitioner did take the child to the hospital. Upon investigating T.G.'s injuries, law enforcement noted that petitioner's "story regarding the child's injuries kept changing." The petition further alleged that petitioner's failure to obtain timely medical treatment for T.G. created a serious risk of infection and resulted in the child requiring additional medical procedures. It was later determined that the child would be permanently scarred as a result of the burns. Due to the child's injuries and the lack of medical treatment, petitioner was arrested for criminal child neglect and remained incarcerated during the proceedings. According to the petition, petitioner also admitted to abusing marijuana during the period she delayed obtaining medical treatment for T.G. The DHHR also included allegations about a prior abuse and neglect proceeding involving allegations of domestic violence and medical neglect in regard to T.G. contracting pneumonia. Petitioner was able to regain custody of the children, but T.G.'s father's parental rights were terminated during that prior proceeding. Following the petition's filing in the instant matter, the court ratified the emergency removal of the children at the preliminary hearing.

In December of 2019, the circuit court held an adjudicatory hearing, during which the DHHR presented evidence consistent with the allegations in the petition. Additionally, the DHHR presented evidence that while the child was suffering from the injuries in question, petitioner abused marijuana and methamphetamine with her boyfriend. Based on this evidence, the circuit court found that petitioner failed to protect T.G. from her boyfriend's abuse, failed to seek medical attention for the child, and failed to provide the children with appropriate care because of her substance abuse and allowing the boyfriend to supervise the children. As such, the court found that petitioner abused and neglected the children. Prior to the dispositional hearing, the DHHR filed a court summary in regard to the children and recommended that petitioner's parental rights be terminated. The guardian also filed a report in regard to both children in which he recommended that petitioner's parental rights be terminated. The DHHR also filed a family case plan recommending termination of petitioner's parental rights, but it appears from the record that this document was filed in relation to T.G. only.

In February of 2020, the circuit court held a dispositional hearing, during which the DHHR requested that the circuit court terminate petitioner's parental rights to both children. A Child Protective Services worker testified that petitioner had not participated in any services as a result of her incarceration. Ultimately, the circuit court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect at issue and that termination of her parental rights was in the children's best interest. Accordingly, the

circuit court terminated her parental rights to both children.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

First, we note that petitioner is entitled to no relief in regard to her assignment of error alleging that the circuit court erred in failing to grant her an improvement period.[3] On appeal, the record is devoid of a motion for an improvement period.[4] Not only does West Virginia Code §

---

[2]T.G.'s father's parental rights have also been terminated. The permanency plan for that child is adoption in the current foster home. The permanency plan for M.G. is to remain in the custody of the nonabusing father.

[3]In support of this assignment of error, petitioner asserts, in passing, that she "was granted services at the preliminary hearing" and that it was "unfair that [she] was not able to participate in services and had her parental rights terminated" as a result of her inability to post bond. This assertion has no bearing on the issue of whether the circuit court committed error in regard to an improvement period, especially given the analysis above concerning petitioner's failure to properly move for the same. Further, because this assertion lacks legal support, we will not address the same on appeal. *See* W. Va. R. App. Proc. 10(c)(7) (providing that a petitioner's brief "must contain an argument exhibiting clearly the points of fact and law presented . . . and citing the authorities relied on").

[4]The only portion of the record that could possibly be construed as a motion for an improvement period occurred at the end of the dispositional hearing when petitioner's counsel "ask[ed] that [petitioner's] rights not be terminated" because petitioner "would like to—once she's able to get out of jail—to be able to have a dispositional improvement period." Given that petitioner was in jail at the time and agreed that she could not participate in an improvement

(continued . . .)

3

49-4-610 require that a parent file a written motion in order to be granted an improvement period, but we have also held that "'[o]ur general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009). Because petitioner failed to move for an improvement period in the circuit court, she has waived this issue and is precluded from alleging error in the circuit court's failure to grant her one on appeal.

Next, we find no error in the termination of petitioner's parental rights. At the outset, it is important to note that petitioner's argument concerning the termination of her parental rights relates only to M.G. Petitioner raises no argument in regard to the termination of her parental rights to T.G. and, as such, the circuit court's termination of her parental rights to T.G. is not at issue. In regard to M.G., petitioner argues that termination was improper because the DHHR's case plan did not include information concerning M.G. and that a less-restrictive disposition could have been implemented because the child was placed in the permanent care of the nonabusing father. We find, however, that petitioner is entitled to no relief.

We begin by finding that the DHHR's failure to include M.G. in its case plan does not, under the limited facts of this case, constitute reversible error. As this Court has explained,

> "[t]he purpose of the family case plan as set out in W.Va. Code [§ 49-4-408(a)] . . . is to clearly set forth an organized, realistic method of identifying family problems and the logical steps to be used in resolving or lessening these problems." Syl. Pt. 5, *State ex rel. Dep't of Human Services v. Cheryl M.*, 177 W.Va. 688, 356 S.E.2d 181 (1987).

Syl. Pt. 2, *In re Desarae M.*, 214 W. Va. 657, 591 S.E.2d 215 (2003). Here, petitioner does not dispute that the DHHR filed a case plan at least five days prior to the dispositional hearing in accordance with West Virginia Code § 49-4-604(a), nor does she allege that the case plan the DHHR filed was deficient in setting forth the manner in which she could correct the conditions of abuse and neglect at issue. Instead, she simply alleges that the case plan made no reference to M.G. However, petitioner cannot establish that she was in any way prejudiced by M.G.'s exclusion from the case plan.

Importantly, with the exception of the specific injuries to T.G., the conditions of abuse and neglect in regard to each child were identical, in that they concerned petitioner's substance abuse and failure to provide the children with proper supervision. As such, the method for regaining custody of each child was identical and the purpose of the case plan was served in regard to both children. Further, petitioner was not prejudiced by the DHHR seeking termination

---

period, it is clear that this request was not for an improvement period but, instead, a request for some delay in the proceedings so that petitioner could later obtain an improvement period. As such, we decline to characterize this statement as a motion for an improvement period for purposes of preserving this issue for appeal.

of her parental rights to M.G. at the dispositional hearing because she had notice that this would happen. Specifically, both the DHHR and the guardian filed documents in regard to both children prior to the dispositional hearing expressing an intention to seek the termination of petitioner's parental rights. Essentially, the facts of this specific case show that petitioner was well aware what conditions she needed to correct in order to regain custody of both children and that her parental rights to both children would be terminated if she did not correct these conditions. As this Court has held, vacation of dispositional orders is warranted "[w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children [alleged] to be abused or neglected has been substantially disregarded or frustrated." Syl. Pt. 3, *In re Emily G.*, 224 W. Va. 390, 686 S.E.2d 41 (2009). Because we find, under the limited circumstance of this case, that petitioner was not prejudiced by the DHHR's failure, we find that vacation of the dispositional order is not warranted.

Most importantly, petitioner does not dispute the fact that M.G. was properly named in the petition or that she was properly adjudicated as an abusing parent in regard to M.G. As such, the court was required to proceed to disposition with respect to M.G. As this Court has recognized,

> West Virginia Code § 49-4-604 . . . specifies the steps to be taken "[f]ollowing a determination" of abuse or neglect. Section 604 provides that after the development of a case plan and possible attempts at remedial action, the court shall then proceed to disposition. *Id.* This two-stage process is well-recognized in our case law.

*In re K.H.*, No. 18-0282, 2018 WL 6016722 at *4 (W. Va. Nov. 16, 2018)(memorandum decision). Indeed, we have previously explained that

> [t]he statutory scheme applicable in child abuse and neglect proceedings provides for an essentially two phase process. The first phase culminates in an adjudication of abuse and/or neglect. *See* W.Va. Code § [49-4-601]. The second phase is a dispositional one, undertaken to achieve the appropriate permanent placement of a child adjudged to be abused and/or neglected. *See* W.Va. Code § [49-4-604].

*In Re Beth Ann B.*, 204 W.Va. 424, 427, 513 S.E.3d 472, 475 (1998). Because petitioner was adjudicated in regard to M.G., we find no error in the circuit court proceeding to disposition in regard to this child.

Additionally, the fact that M.G.'s nonabusing father obtained full custody of the child has no bearing on the circuit court's termination of petitioner's parental rights. While petitioner argues that this permanent placement allowed for the implementation of a less-restrictive dispositional alternative, she ignores the fact that we have previously held that West Virginia Code § 49-4-604 "permits the termination of one parent's parental rights while leaving the rights of the nonabusing parent completely intact, if the circumstances so warrant." *In re Emily*, 208 W. Va. 325, 344, 540 S.E.2d 542, 561 (2000). Further, "simply because one parent has been found to be a fit and proper caretaker for [the] child does not automatically entitle the child's other

parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *Id*. Here, the circuit court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that the child's welfare required termination. Petitioner does not challenge these findings on appeal. Because West Virginia Code § 49-4-604(c)(6) permits the termination of parental rights upon such findings, it is clear that petitioner is entitled to no relief. Further, as this Court has held,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 7, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: September 23, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison